UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 506-CV-215-R

LIBERTY CORPORATE CAPITAL, LTD.                                        PLAINTIFF

v.

ABDALLA EL BANNAN, et al.                                              DEFENDANTS

### MEMORANDUM OPINION

This matter is before the Court upon Plaintiff's Motion for Summary Judgment (Docket #71).  Defendant Josesph Shaheen, f/k/a Abdalla El Bannan, has responded and moved to dismiss (Docket #76).  Plaintiff has replied (Docket #86).  The Court also considers Defendant's surreply (Docket #88) and Plaintiff's reply (Docket #89).  This matter is now ripe for adjudication.  For the following reasons, Plaintiff's Motion for Summary Judgement is **GRANTED** in part and **DENIED** in part.

### BACKGROUND

This coverage action arises out of a lawsuit filed by Joseph Shaheen ("Shaheen"), f/k/a Abdalla El Bannan, administrator of Nadia Shaheen's estate, against Lambda Chi Alpha Fraternity, Inc., the Lambda Eta Chapter of Lambda Chi Alpha, Burgess Harrison Yonts, and sixty-two individual Lambda Eta Chapter fraternity members.  On November 11, 2005, Burgess Harrison Yonts's ("Yonts") car struck Nadia Shaheen, causing her death.  Prior to the accident, Yonts consumed alcohol at Nick's Family Sports Pub and at the Lambda Chi Alpha Fraternity House on the campus of Murray State University.  Yonts was legally intoxicated when his car struck Nadia Shaheen.

Plaintiff Liberty Corporate Capital, Ltd. ("Liberty") is the lead underwriter providing

insurance coverage for Lambda Chi Alpha Fraternity, Inc. ("LXA") through a general liability manuscript policy with Certain Underwriters at Lloyd's, London. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Liberty filed this action in federal court seeking a declaratory judgment absolving it of any duty to defend or indemnify Defendants Lambda Eta Chapter and its fraternity members with respect to the aforementioned lawsuit. The Court granted Defendant Yonts's motion to intervene. Liberty now moves for summary judgment against Yonts and the Lambda Eta Chapter.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "The mere existence of a colorable factual dispute will not defeat a properly

supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

Liberty argues that, as a matter of law, it has no duty to defend and/or indemnify Yonts and the Lambda Eta Chapter under the clear and unambiguous language of an insurance policy issued by it to LXA. Liberty presents several arguments for why coverage is not available under the policy. First, Liberty argues that neither Yonts nor the Lambda Eta Chapter qualify as "Insureds" under the policy. Second, Liberty argues that coverage is excluded under the policy's "Violations of Fraternity Alcohol Policy" exclusion. Third, Liberty argues that coverage for Yonts is excluded under the policy's automobile exclusion. Finally, Liberty argues that coverage is excluded under the policy's excess insurance provision.

Neither Yonts nor the Lambda Eta Chapter have opposed Liberty's motion for summary judgment. Pursuant to Federal Rule of Civil Procedure 56(e)(2), "if the opposing party does not so respond, summary judgment should, if appropriate, be entered against the party." However, Defendant Shaheen has responded in this matter, arguing several reasons why summary judgment is improper and moving to dismiss the action. Liberty argues that Shaheen's opposition should be rejected because Shaheen is not a party to the insurance policy and therefore has no standing.

Tort claimants are proper party defendants to an insurance company's declaratory judgment action for non-coverage of an insurance policy. *See Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941). Shaheen raises the issue of whether an actual controversy exists

3

between Liberty and the Eta Lambda Chapter. District courts are without power to grant declaratory relief unless an actual controversy exists between the parties. *Id.* at 272 (internal citations omitted). Shaheen argues that no actual controversy exists between Liberty and the Lambda Eta Chapter because the Lambda Eta Chapter is an unincorporated association having no legal identity separate from the collective fraternity members it represents. Because the court determined in *Shaheen v. Yonts*, No. 5:06-CV-173, 2008 WL 610533 (W.D. Ky. March 3, 2008), that the sixty-two individual fraternity members were not liable for Yonts's actions under Kentucky law, Shaheen argues that there is no basis upon which Liberty can defend or indemnify the Lambda Eta Chapter. Therefore, the question of whether Liberty has a duty to defend or indemnify the Lambda Eta Chapter is completely hypothetical and no actual controversy between the parties exists.

Under Article III of the Constitution, a court's judicial authority extends only to those legal questions presented in "Cases" or "Controversies." U.S. CONST., art. III, § 2; *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 961 (6th Cir. 2009). "In recognition of the Constitution's limit on judicial authority, the Declaratory Judgment Act, 28 U.S.C. § 2201(a), permits a court to enter declaratory relief only '[i]n a case of actual controversy ....'" *Fieger*, 553 F.3d at 961. If the case or controversy requirement is not satisfied, then a court has no jurisdiction to hear the case. *Id.* Here, the Court need not determine whether Shaheen has standing to assert that no actual controversy exists between Liberty and the Lambda Eta Chapter because the Court can raise the issue of subject matter jurisdiction at any time. Fed. R. Civ. Pro. 12(h)(3); *Grider v. Abramson*, 180 F.3d 739, 746 (6th Cir. 1999) ("Federal courts possess subject matter jurisdiction only over actual cases or controversies. The 'case or controversy'

justiciability requirement must be satisfied 'at all stages of review, and not simply on the date the action is initiated.'" (quoting *Thomas Sysco Food Services v. Martin*, 983 F.2d 60, 62 (6th Cir.1993))).

To determine whether an actual controversy exists, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland*, 312 U.S. at 273. Here, no substantial controversy exists between Liberty and the Lambda Eta Chapter because there is no basis upon which the Lambda Eta Chapter can be found liable when it has already been determined that none of the individual fraternity members are liable for Yonts's actions. Therefore, any declaratory judgment issued by the Court would be purely advisory.

The basis for the Court's conclusion that the Lambda Eta Chapter faces no immediate or real threat of liability is Kentucky law. Although no Kentucky case is directly on point, it is clear that under Kentucky law unincorporated associations are not legal entities. *See Future Federal Sav. and Loan Ass'n v. Daunhauer*, 687 S.W.2d 871, 873 (Ky. Ct. App. 1985); *Business Realty, Inc. v. Noah's Dove Lodge No. 20*, 375 S.W.2d 389, 390 (Ky. Ct. App. 1964). Thus, any liability that attaches to them falls to their individual members. *Jim Host & Associates, Inc. v. Sharpe*, 639 S.W.2d 784, 785 (Ky. Ct. App. 1982). Where it has already been determined that the sixty-two individual fraternity members comprising the Lambda Eta Chapter are not liable as a matter of law for the actions of Yonts, *see Shaheen v. Yonts*, No. 5:06-CV-173, 2008 WL 610533 (W.D. Ky. March 3, 2008), there can be no basis for the Lambda Eta Chapter's liability as an unincorporated association under Kentucky law. Therefore, any discussion of Liberty's

5

duty to defend or indemnify the Lambda Eta Chapter would be completely hypothetical. Because no actual controversy exists between Liberty and the Lambda Eta Chapter, the Court must dismiss Liberty's action against Defendant Lambda Eta Chapter.

As to Liberty's coverage of Yonts, the Court need not decide whether Shaheen has standing to assert defenses on behalf of Yonts because it is clear that, as a matter of law, Yonts is not an "Insured" within the clear and unambiguous language of the insurance policy. Furthermore, contrary to Shaheen's argument, KRS § 304.14-230 does not apply in this case.

Under Kentucky law, "[w]here the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002) (citations omitted). However, insurance policies are to be construed liberally in favor of the insured. *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226-27 (Ky. 1994). If a provision of the policy is susceptible to two interpretations due to an uncertainty or ambiguity in the policy language, then the interpretation most favorable to the insured should be adopted. *Id.; Fryman for Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky. 1986).

The present insurance policy contains an endorsement providing "Who Is Insured." It states, in pertinent part:

> Each of the following entities or persons are insureds, by only while acting in accordance with the "Named Insureds" policies and procedures and their own policies and procedures, and only while acting within the scope of their duties, and only with respect to their liability for activities performed by them on behalf of the "Named Insureds", or of insured "Chapters", "Colonies", "Housing Organizations", or "Alumni Organizations":
> (1) "Chapters" and "Colonies"
> (2) "Undergraduate Insureds"
> (3) "Housing Organizations" and "Alumni Organizations"
> (4) "Directors and Officers"

6

(5) "Individual Insureds"

The policy defines "Undergraduate Insureds" as "individuals who are undergraduate collegiate students that are officers, members, or member candidates, that are affiliated with a 'Chapter' or 'Colony' whose affiliation with the 'Named Insureds' is acknowledged to exist by the governing body of the First Named Insured at the time of loss."  The First Named Insured of the policy is Lambda Chi Alpha Fraternity, Inc. and the other Named Insureds include the Lambda Chi Alpha Educational Foundation, Inc. (an Indiana not-for-profit corporation) , Lambda Chi Alpha Educational Foundation, Inc. (a Canadian not-for-profit corporation), and Lambda Chi Alpha Properties, Inc.

The plain language of the endorsement sets forth a three-part test for who qualifies as an insured under the policy.  To qualify as an insured at the time of loss, an "Undergraduate Insured" must be (1) acting in accordance with LXA's policies and procedures and the Lambda Eta Chapter's policies and procedures; (2) acting within the scope of his duties; and (3) acting only with respect to liability for activities performed by him on behalf of LXA or the Lambda Eta Chapter.  *Accord Liberty Corporate Capital, Ltd. v. Phi Omega Chapter of Phi Sigma*, No. 06-CV-4808, 2008 WL 3911259, at *6 (D. Minn. Aug. 19, 2008).  Yonts is an "Undergraduate Insured" since he was a member of the Lambda Eta Chapter at the time of the accident.  However, Yonts was not acting in accordance with LXA's alcoholic beverage policy at the time.

The LXA Constitution includes a mandatory resolution on alcoholic beverages that prohibits "the possession, consumption, and distribution of alcoholic beverages on the premises of any Chapter . . . be in conflict with institutional, state, provincial, or legal regulations and policies."  The LXA manual reiterates this same policy.  Under Kentucky law, it is illegal for a

person under twenty-one to possess any alcoholic beverages for his own use. KRS § 244.085(3). In his deposition testimony, Yonts, then a minor, admitted to possessing and drinking alcoholic beverages while at the party at the Lambda Eta Chapter. (Yonts Dep. 73:9-74:19, May 23, 2008). Based on this evidence, no reasonable jury could conclude that Yonts was acting in accordance with LXA's alcoholic beverages policy. Therefore, Yonts is not an insured within the definition of the policy because he was not acting in accordance with LXA's alcoholic beverages policy.

Even if the Court were to find that Yonts was within the policy's definition of an insured, the policy's alcohol exclusion exempts him from coverage. The "Violations of Fraternity Alcohol Policy" exclusion states:

> No insurance coverage afforded by this policy shall apply to any "Chapter", "Colony", or "Undergraduate Insureds" for any claim out of or in any way resulting from any "Violation" of "Fraternity Alcohol Policy."

A "Fraternity Alcohol Policy" is defined as "the written rules, regulations, or procedures regarding alcohol, which are established by the First Named Insured . . . at the time of loss." A "Violation" is defined as a "determination by the executive board of the First Named Insured, or legal authority that some breaking, infraction, or breach of 'Fraternity Alcohol Policy' occurred."

For the reasons provided above, the Court has already determined that no reasonable jury could find that Yonts was acting in accordance with LXA's alcoholic beverages policy when he illegally possessed and consumed alcohol as a minor at the Lamda Eta Chapter on November 10-11, 2005. Therefore, the Court, as a legal authority, has determined that Yonts breached LXA's alcoholic beverages policy. *Accord Liberty Corporate Capital, Ltd. v. Nu Zeta Chapter of*

*Lambda Chi*, No. 3:05-CV-115, 2007 WL 496736, at *3-4 (M.D. Ga. Feb. 13, 2007) (stating that court a legal authority and determining that violation of alcohol policy occurred); *Phi Omega*, 2008 WL 3911259, at *7 (determining that violation of alcohol policy occurred). Under both the definition of insured and the alcohol exclusion, it cannot be said that Yonts was acting in a capacity covered by the insurance policy.

Shaheen argues that Liberty is estopped from relying on the policy language because the insurance policy was never delivered to Yonts. Under KRS § 304.14-230, "every policy shall be mailed or otherwise delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance . . ." Shaheen does not cite, nor has the Court been able to locate, any case law discussing KRS § 304.14-230. However, Shaheen does cite to *Breeding v. Massachusetts Indem. and Life Ins. Co.*, wherein the Kentucky Supreme Court concluded that an insurer's failure to provide the decedent with a certificate of insurance outlining his coverage as required under Kentucky's Insurance Code estopped the insurer from asserting an exclusion provided in the policy. 633 S.W.2d 717, 710-20 (Ky. 1982).

Liberty admits that a copy of the insurance policy was never delivered to Yonts. But Liberty argues that no delivery was necessary under Kentucky law because KRS § 304.14-230 does not apply in this case. Liberty points to KRS § 304.14-010, which provides, in pertinent part, that subtitle 14 of the Insurance Code applies to all insurance and annuity contracts other than policies or contracts "not issued for delivery in this state nor delivered in this state."

Here, the insurance policy was delivered to the First Named Insured, LXA, in Indianapolis, Indiana. The policy was issued for delivery in Indiana and makes no reference to delivery in Kentucky. For these reasons, the Court finds that the insurance policy falls within the

type meant to be excluded under KRS § 304.14-010. To find otherwise would require general liability insurers to deliver their policies to every potential insured falling within their general liability policy's coverage and undermine the meaning of KRS § 304.14-010. Where the policy was not issued for delivery nor delivered in Kentucky, the Court finds KRS § 304.14-230 inapplicable.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED in part and DENIED in part. All claims against Defendant Lambda Eta Chapter are DISMISSED.

An appropriate order shall issue.